VINCENT *v.* LINCOLN Co.   LUNING *v.* SAME.   SUTRO *v.* SAME.

*(Circuit Court, D. Nevada.   April 30, 1887.)*

COUNTIES—ACTIONS AGAINST—JURISDICTION.
> In Nevada counties are liable to be sued in the state courts, the same as "natural persons." *Held, also,* that they are liable to be sued in the courts of the United States.

*(Syllabus by the Court.)*

Demurrer to Complaint.

*Freeman, Bates & Rankin*, for plaintiffs.

*T. J. Osborne*, Dist. Atty., and *Trenmor Coffin*, for defendant.

SABIN, J.   These actions are brought by plaintiffs to recover from Lincoln county, Nevada, various sums, aggregating something in excess of $300,000, alleged to be due plaintiffs upon certain bonds and interest coupons issued by said county pursuant to an act of the legislature of said state approved February 17, 1873. St. Nev. 1873, p. 54. The object of the act was to provide for the funding and consolidation of the outstanding indebtedness of said county, and the bonds sued upon were issued pursuant thereto. Default having been made in the payment of both principal and interest, these actions are brought. Two of the plaintiffs are citizens of California; the other is a citizen and subject of Germany.

A demurrer was filed by defendant in each case upon the same grounds, and, the cases being all upon like causes of action, the demurrers were argued and submitted together. The points raised by the demurrers are: (1) The court has no jurisdiction over the defendant, which is one of the organized counties of the state of Nevada; (2) the court has no jurisdiction over the subject-matter of the action.

In support of the first point raised by the demurrers, it is urged that a county is a political subdivision, and a portion of the sovereignty of the state; that it is in no just sense a citizen of the state; that it is not a corporation, and cannot be sued except by permission of the state, and then only in such courts as the state may designate for that purpose.

In support of these propositions, counsel cite *Hunsaker* v. *Borden*, 5 Cal. 290; *Hastings* v. *San Francisco*, 18 Cal. 57; *Sharp* v. *Contra Costa Co.*, 34 Cal. 284; *County of Rock Island* v. *Steele*, 31 Ill. 534; *Lowndes Co.* v. *Hunter*, 49 Ala. 511; *Taylor* v. *Salt Lake Co.*, 2 Utah, 405; *Hamilton Co.* v. *Mighels*, 7 Ohio St. 109; Dill. Mun. Corp. §§ 22, 23.

Upon the second point of demurrer, it is insisted that the court has not jurisdiction of the subject-matter of the action, for the reason that the act under which the bonds were issued provides the means and court by which the act may be enforced.

Section 19 of the act is as follows:

"The district court of Lincoln county shall have power to enforce obedience to the provisions of this act, and for that purpose shall have full power to issue process of *mandamus,* prohibition, and all other writs that may be required that are authorized by law."

That, having specified the court and remedies in the act, all others are prohibited, and that the holders of the bonds took them subject to these limitations as to courts and remedies. 31 Ill. 534, and 18 Cal. 57, *supra,* are cited.

Plaintiffs contend that a county is a municipal corporation, or, at least, a *quasi* municipal corporation, and liable to be sued in any proper court, upon default in its obligations; that the constitution and statutes of Nevada give this right of action; that it has been so adjudged by the supreme court of Nevada in a number of cases; that section 19 of the act, referred to, places no restriction upon the right to bring suit in any court of competent jurisdiction. Counsel cite *Blanchard* v. *Kaull,* 44 Cal. 451; *Mills* v. *Williams,* 11 Ired. 561; Ang. & A. Corp. §§ 14, 23, 164; Dill. Mun. Corp. § 22; *Maury Co.* v. *Lewis Co.,* 1 Swan, 240; *Louisville & N. R. R.* v. *County Court,* 1 Sneed, 687; *Shawnee Co.* v. *Carter,* 2 Kan. 128; *Price* v. *County of Sacramento,* 6 Cal. 256; *Dean* v. *Davis,* 51 Cal. 406; *Levy Court* v. *Coroner,* 2 Wall. 501; *Waitz* v. *Ormsby Co.,* 1 Nev. 370; *Floral Springs W. Co.* v. *Rives,* 14 Nev. 434; *McCoy* v. *Washington Co.,* 3 Wall. Jr. 385; *Cowles* v. *Mercer Co.,* 7 Wall. 118; *Adams* v. *County of Republic,* 23 Fed. Rep. 211; *Wall* v. *Monroe Co.,* 103 U. S. 77; *Loan Ass'n* v. *Topeka,* 20 Wall. 655; *Cromwell* v. *County of Sac,* 94 U. S. 351; *County of Greene* v. *Daniel,* 102 U. S. 195.

Whatever may be the legal *status* of counties in the state of Nevada, whether considered as municipal corporations or otherwise, we think their liability to be sued in any court of competent jurisdiction is too clear to admit of doubt. Ever since the adoption of the constitution of the state, in 1864, the supreme court of the state has, in numerous decisions, affirmed this right, and enforced this liability. *Waitz* v. *Ormsby Co.,* 1 Nev. 370; *Clarke* v. *Lyon Co.,* 8 Nev. 181; *Floral Springs W. Co.* v. *Rives,* 14 Nev. 434.

Nearly every volume of the Nevada Reports contains one or more cases in which counties appear as parties seeking to enforce alleged rights and obligations, and their legal capacity and right so to do passes unquestioned, or, if questioned, has always been maintained.

In 1 Nev. 370, *supra,* the very points raised by the demurrers in these cases, though stated in inverse order, are considered by the court, and decided adverse to defendant.

In *Clarke* v. *Lyon Co.,* 8 Nev. 181, it is decided that a county is liable to be sued in any district court within the state, and, if the defendant county desires the action tried in the judicial district of which it is a part,

it must move to have the case transferred, the same as would be required of any defendant.

In 14 Nev. 431, it is held:

"Under those provisions, [constitutional,] the jurisdiction of an action against a county is determined by the same rule that determines the jurisdiction of actions against *natural* persons. * * * That the right to sue a county on demands under, as well as over, three hundred dollars does exist, cannot be doubted. The statute of 1864 confers it, and nothing in the constitution, or an subsequent statute, has taken it away."

The statute referred to provides only for bringing suits against counties in the district courts, which have not jurisdiction of cases involving less than $300. It reads: "Actions against a county may be commenced in the district court of the judicial district embracing said county." St. 1864, p. 45; Gen. St. Nev. 1885, § 3667.

The constitution of the state, art. 8, of "Municipal and other Corporations," § 5, provides: "Corporations may sue and be sued in all courts, in like manner as individuals." Section 10: "No county, city, town, or other municipal corporation, shall," etc. Article 9, § 4: "The state shall never assume the debts of any county, town, city, or other corporation whatever, unless," etc.

From these provisions of the constitution and the statutes, and the uniform and repeated rulings of the supreme court thereon, the liability of a county to be sued in any court of competent jurisdiction cannot be questioned. It remains, then, only to determine whether or not this liability can be enforced in a national court.

The jurisdiction of these courts is regulated by congress solely, and the states are without authority to enlarge, restrict, or abridge that jurisdiction. Where the jurisdictional facts exist, as to citizenship and subject-matter, it is the right of any person to invoke the jurisdiction and aid of the national courts in the enforcement of alleged rights. It is urged that there is an element of sovereignty lingering about a county which exempts it from the jurisdiction of the United States courts, unless the state has expressly provided by statute that a county shall be subject to such jurisdiction. This claim is not new in character, nor in the purpose for which it is invoked, to-wit, in aid of repudiation.

In every reported case which I have found where this defense is urged, its sole and single purpose has been to avoid legal obligations. It is difficult, however, to perceive very much of sovereignty in a county. Subject, in a state, only to constitutional limitation, or in a territory to the restriction of the organic act, a county is the merest creature of the legislature. From it it derives its name, its extent of territory, its mode and manner of government, its powers and rights. It is the creature of the legislature, called into existence by it, and subject to the restrictions above named, its whole being may be changed by the same power which created it. Its name may be changed, its territory cut up and parceled out to other counties, its board of officers shorn of their powers, its revenues cut off, its existence as a county blotted out, and this against the will of its inhabitants. *Commissioners of Laramie Co.* v. *Com-*

*missioners of Albany Co.*, 92 U. S. 307. If aught of sovereignty really exists in a county, it would seem to rest wholly in the sovereign right of repudiation,—a right or privilege sometimes exercised by sovereigns.

In *Lyell* v. *Lapeer Co.*, 6 McLean, 446, this defense was urged: "That this court has no jurisdiction in the cause, the defendant being a political body of the state, and not amenable to legal process in the United States court." Mr. Justice McLEAN disposes of this defense in few words:

"A county cannot claim the immunity of not being sued under the eleventh amendment of the constitution. If every county could throw itself on its sovereignty, and hold at defiance the judicial power of the Union, we should have in the country more sovereignty than law."

In *McCoy* v. *Washington Co.*, 3 Wall. Jr. 381, the same defense was interposed. Says Mr. Justice GRIER:

"It is contended that the county of Washington, being merely a subordinate political division of the state of Pennsylvania, is not a citizen of this state, within the meaning of the constitution or of the act of congress, and therefore not suable in this court. To this we answer that, though the metaphysical entity called a corporation may not be physically a citizen, yet the law is well settled that it may sue and be sued in the courts of the United States, because it is but the name under which a number of persons, corporators and citizens, may sue and be sued. In deciding the question of jurisdiction, the court look behind the name and find who are the parties really in interest. In this case, the parties to be affected by the judgment are the people of Washington county. That the defendant is a municipal corporation, and not a private one; furnishes a stronger reason why a citizen of another state should have his remedy in this court, and not in a county where the parties against whom the remedy is sought would compose the court and jury to decide their own case. This point is therefore overruled."

In *Cowles* v. *Mercer Co.*, 7 Wall. 118, the court says:

"But it was argued that counties in Illinois, by the law of their organization, were exempted from suit elsewhere than in the circuit courts of the county; and this seems to be the construction given to the statutes concerning counties by the supreme court of Illinois. But that court has never decided that a county in Illinois is exempted from liability to suit in national courts. It is unnecessary, therefore, to consider what would be the effect of such a decision. It is enough for this case that we find the board of supervisors to be a corporation authorized to contract for the county. The power to contract with citizens of other states implies liability to suit by citizens of other states, and no statute limitation of suability can defeat a jurisdiction given by the constitution. We cannot doubt the constitutional right of the defendant in error to bring suit in the circuit court of the United States upon the obligations of the county of Mercer against the plaintiff in error. And we find no error in the judgment of that court. It must therefore be affirmed."

We think the authorities cited are decisive of the matters under discussion. We cite, however, in addition to those cited by plaintiff's counsel, the following as pertinent and applicable: *National Bank* v. *Sebastian Co.*, 5 Dill. 414; *Railway Co.* v. *Whitton's Adm'r*, 13 Wall. 270; *Marion Co.* v. *McIntyre*, 10 Fed. Rep. 543; *Cunningham* v. *County of Ralls*, 1 Fed. Rep. 453; *Davis* v. *James*, 2 Fed. Rep. 618; *Jordan* v.

*Cass Co.*, 3 Dill. 185; 7 Cent. Law J. 262; *Lyell* v. *St. Clair Co.*, 3 McLean, 580.

Upon the first point urged, that section 19 of the act under which these bonds were issued imposes a limitation upon the holder to sue only in the state court, the case of *Insurance Co.* v. *Morse*, 20 Wall. 445, is a complete answer. If that was the object and purpose of that section, it is void, since the state cannot directly nor indirectly control the jurisdiction of the national courts, nor can it limit or control the rights of parties to bring suits therein. But we scarcely think such was its purpose, though we may not be able to say what that purpose was. It conferred no additional powers upon the district court for that county to those already conferred. By act approved January 26, 1865, it was enacted that "the district courts, and the judges thereof, shall have power to issue writs of *mandamus*, injunction, *quo warranto, certiorari*, and all other writs proper and necessary to the complete exercise of their jurisdiction." St. Nev. 1864–65, *c.* 19, p. 110; Gen. St. Nev. § 2439.

Section 19 of the act of 1873, referred to, confers no greater powers. It is mere surplusage. But, giving it full effect, it can only be considered as an effort to give a more complete remedy and proceeding than any then existing. If another remedy and proceeding existed, the bondholder could elect which he would pursue. This is distinctly ruled upon in *Waitz* v. *Ormsby Co.*, 1 Nev. 370, *supra.* Concurrent remedies often exist, with option to the party invoking either. It may not be necessary, for the purposes of this case, to formally decide whether or not cities, towns, and counties in Nevada are municipal "corporations," in the absence of any statute in terms declaring them to be such. We think their liability under the constitution and statutes of Nevada, and the decisions of the supreme court of the state thereon, to be sued and brought to judgment upon their obligations, has been fully established. We are not dealing with mere forms and shadows, and creditors are not, when advancing money upon the obligations of these bodies. No city, town, or county would possess any greater corporate power, right, or authority from the fact that it was, by statute, declared to be a body politic and corporate. The power and legal right of these bodies to borrow money and incur obligations implies the right and duty to pay back that money when due, and to meet those obligations when mature, and, if they will not do this voluntarily, that they be brought to judgment. Without this accountability, there is no safety in dealing with these bodies in any way, and there is in enforcing it against them, the same as against natural persons, not the slightest injustice.

In the case of *Commissioners of Laramie Co.* v. *Commissioners of Albany Co.*, 92 U. S. 307, the court say:

"Counties, cities, and towns are municipal corporations, created by the authority of the legislature, and they derive all their powers from the source of their creation, except where the constitution of the state otherwise provides."

It may be quite immaterial what name may be given to a particular body: it is the powers possessed, used, and exercised by that body which

determines its true legal character and *status*. In the reports of the national courts, supreme and circuit, will be found hundreds of cases in which cities, towns, counties, school-districts, police juries, taxing districts, levy districts, etc., appear as parties plaintiff or defendant, enforcing or defending corporate rights, the corporate rights of each individual body, and no question is made of their legal right or capacity so to do. True, it may be said that this proves nothing, since their right and capacity were conceded from the fact that they were not challenged. But it does show the almost unanimous *consensus* of the bench and bar of the country that these bodies, by virtue of their corporate powers, possessed this right and capacity to sue and be sued, to defend and enforce their rights, in the national courts, in the absence of any state statute relative thereto.

We question if any state in the Union has by statute, in terms, attempted to say when or who of its citizens or corporations, public or private, may be sued in the national courts. Such a statute would be anomalous, and for the most part nugatory, since the jurisdiction of these courts is not a subject of state control.

The demurrers in these cases must be overruled; and it is so ordered.